**No. 25-1046**

===============================================================

# The United States Court of Appeals for the Seventh Circuit

APPELLEE,
*Plaintiff-Appellee,*

v.

K.J. AND M.S.
*Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Wisconsin
Case No. 23-CV-00087-wmc
Honorable Judge William M. Conley

**BRIEF AND SHORT APPENDIX OF DEFENDANTS-APPELLANTS
K.J. AND M.S.**

STEVEN C. MCGAVER
Counsel of Record
WI State Bar No. 1051898
SAMUEL C. HALL, JR.
WI State Bar No. 1045476
CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants-Appellants K.J. and M.S.
710 N. Plankinton Avenue, Suite 500
Milwaukee, Wisconsin 53203
Phone: 414-271-7722
smcgaver@crivellolaw.com
shall@crivellolaw.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-1046

Short Caption: Appellee v. K.J. and M.S.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
K.J. and M.S.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Crivello, Nichols & Hall, S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Steven C. McGaver    Date: February 24, 2025

Attorney's Printed Name: Steven C. McGaver

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑  **No** ☐

Address: 710 North Plankinton Avenue, Suite 500

Milwaukee, WI 53203

Phone Number: (414) 271-7722    Fax Number: (414) 271-4438

E-Mail Address: smcgaver@crivellolaw.com

rev. 12/19 AK

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>25-1046</u>

Short Caption: <u>Appellee v. K.J. and M.S.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

       ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>K.J. and M.S.</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Crivello, Nichols & Hall, S.C.</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>None</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>None</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

---

Attorney's Signature: <u>/s/ Samuel C. Hall, Jr.</u>      Date: <u>February 24, 2025</u>

Attorney's Printed Name: <u>Samuel C. Hall, Jr.</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** ☐　**No** ☑

Address: <u>710 North Plankinton Avenue, Suite 500</u>

    <u>Milwaukee, WI 53203</u>

Phone Number: <u>(414) 271-7722</u>      Fax Number: <u>(414) 271-4438</u>

E-Mail Address: <u>shall@crivellolaw.com</u>

rev. 12/19 AK

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................2

TABLE OF AUTHORITIES........................................................................3

JURISDICTIONAL STATEMENT .............................................................7

STATEMENT OF ISSUES ..........................................................................8

STATEMENT OF CASE...............................................................................9

    I.     Appellee Contacts the Columbia County Sheriff's Office .............9

    II.    K.J.'s Visit to Appellee at WSPF ..................................................10

    III.   Events after K.J.'s December 6, 2022 Visit to WSPF ..................11

    IV.   Procedural Posture ........................................................................12

SUMMARY OF THE ARGUMENT .........................................................12

ARGUMENT ...............................................................................................13

    I.     THE COURT REVIEWS SUMMARY JUDGMENT DECISIONS DE NOVO ........................................................................................13

    II.    APPELLEE HAS NOT SHOWN A CONSTITUTIONAL VIOLATION ....................................................................................14

    III.   K.J. AND M.S. ARE ENTITLED TO QUALIFIED IMMUNITY ON APPELLEE'S EIGHTH AMENDMENT FAILURE TO PROTECT CLAIM ........................................................................16

        A. As of December 6, 2022, No Authority Had Clearly Established that Appellants' Conduct was Unconstitutional.....................16

           i.     There is no closely analogous case...............................19

           ii.    K.J. and M.S.'s Conduct was not so egregious or unreasonable that no reasonable official could have thought they were acting lawfully ...............................27

        B. The District Court's Purported Dispute

          of Fact is Unsupported ..........................................................28

CONCLUSION ............................................................................................30

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(A)(7), FRAP RULE 32(g) AND FRAP RULE 32(c) ...................................................31

PROOF OF SERVICE ................................................................................32

CIRCUIT RULE 30(d) STATEMENT.......................................................33

ATTACHED REQUIRED SHORT APPENDIX ...........................................34

2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Sangamon County,*
705 F.3d 706 (7th Cir. 2013) ............................................................... 25

*Anderson v. Creighton,*
483 U.S. 635 (1987) ............................................................................. 14

*Arnett v. Webster,*
658 F.3d 742 (7th Cir. 2011) ............................................................... 26

*Babcock v. White,*
102 F.3d 267 (7th Cir. 1996) ............................................................... 12

*Belcher v. Norton,*
497 F.2d 742 (7th Cir. 2007) ............................................................... 16

*Benefield v. McDowall,*
241 F.3d 1267 (10th Cir. 2001) ................................................. 21, 22, 23

*Bordelon v. Bd. of Educ. Of the City of Chicago,*
811 F.3d 948 (7th Cir. 2016) ............................................................... 26

*Brosseau v. Haugen,*
543 U.S. 194 (2004) ............................................................................. 15

*City & Cnty. of San Francisco v. Sheehan,*
575 U.S. 600 (2015) ........................................................................ 14, 15

*Dale v. Poston,*
548 F.3d 563 (7th Cir. 2008) ............................................................... 11

*Doe V. Welborn,*
110 F.3d 520 (7th Cir. 1997) ............................................................... 12

*Elder v. Holloway,*
510 U.S. 510 (1994) ............................................................................. 14

*Farmer v. Brennan,*
511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ................................ 11, 21

*Grant v. Trustees of Ind. Univ.,*
870 F.3d 562 (7th Cir. 2017) ............................................................... 26

*Green v. Newport,*
  868 F.3d 629 (7th Cir. 2017) ............................................................... 4

*Harer v. Casey,*
  962 F.3d 299 (7th Cir. 2020) ............................................................... 5

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ........................................................................... 14

*Hope v. Pelzer,*
  536 U.S. 709 (2002) ........................................................................... 25

*Hope v. Pelzer,*
  536 U.S. 730 (2002) ..................................................................... 15, 25

*Hunter v. Bryant,*
  502 U.S. 224 (1991) ........................................................................... 14

*Irving v. Dormire,*
  519 F.3d 441 (8th Cir. 2008) .................................................. 20, 21, 23

*K.J. v. Wilhelm,*
  425 F.3d 455 (7th Cir. 2005) ............................................................... 4

*Leaf v. Shelnutt,*
  400 F.3d 1070 (7th Cir. 2005) ............................................................. 5

*Leiser v. Klotch,*
  933 F.3d 696 (7th Cir. 2019) ............................................................. 25

*Lojuk v. Johnson,*
  770 F.2d 619 (7th Cir. 1985) ....................................................... 16, 17

*Lovett v. Herbert,*
  907 F.3d 986 (7th Cir. 2018) ............................................................... 5

*Malley v. Briggs,*
  475 U.S. 335 (1986) ........................................................................... 15

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985) ......................................................................... 4, 5

*Monfils v. Taylor,*
  165 F.3d 511 (7th Cir. 1998) ...................................... 18, 19, 20, 23

*Olson v. Morgan,*
  750 F.3d 708 (7th Cir. 2014) ...................................... 11, 12, 13

4

*Plumhoff v. Rickard,*
572 U.S. 765, 134 S.Ct. 2012 (2014) ............................................................ 15, 18

*Sain v. Wood,*
512 F.3d 886 (7th Cir. 2008) .................................................................................. 5

*Saucier v. Katz,*
533 U.S. 194 (2001) .................................................................................................. 4

*Saunders v. Tourville,*
97 F. App'x 648 (7th Cir. 2004) ........................................................................ 12

*Schlessinger v. Salimes,*
100 F.3d 519 (7th Cir. 1996) ............................................................................. 15

*Scott v. Harris,*
550 U.S. 372 (2007) .............................................................................................. 11

*Smith v. Finkley,*
10 F.4th 725 (7th Cir. 2021) .............................................................................. 26

*Estate of Starks v. Enyart,*
5 F.3d 230 (7th Cir. 1993) ................................................................................... 15

*Stockton v. Milwaukee Cty.,*
44 F.4th 605 (7th Cir. 2022) ............................................................................. 16

*Szymanski v. Benton,*
289 F. App'x 315 (10th Cir. 2008) ............................................................... 22, 23

*Washington v. Haupert,*
481 F.3d 543 (7th Cir. 2007) ......................................................................... 10, 11

*White v. Pauly,*
580 U.S. 73, 137 S.Ct. 548 (2017) ................................................................... 17

*Wilson v. Layne,*
526 U.S. 603 (1999) .............................................................................................. 14

*Ybarra v. City of Chi.,*
946 F.3d 975 (7th Cir. 2020) ............................................................................ 10

## Statutes

28 U.S.C. § 1291 ......................................................................................................... 4

28 U.S.C. § 1331 ......................................................................................................... 4

42 U.S.C. § 1983 ......................................................................................................... 4

## Other Authorities

Eighth Amendment ...................................................................................*passim*

Fourteenth Amendment .................................................................................... 19

Cir. R. 31(e), I................................................................................................... 30

Eighth Amendment. *Merritte*............................................................................ 24

F.R.A.P. Rule 32(a)(7)....................................................................................... 29

F.R.A.P. Rule 32(a)(7) and C. .......................................................................... 29

Fed. R. Civ. P. 56(a) ......................................................................................... 10

Rule 30(a) and (b)............................................................................................. 31

RULE 30(d) ...................................................................................................... 31

RULE 32(c)........................................................................................................ 29

RULE 32(g) ....................................................................................................... 29

## JURISDICTIONAL STATEMENT

The United States District Court for the Western District of Wisconsin had federal question jurisdiction under 28 U.S.C. § 1331 because Appellee alleged Eighth Amendment violations under 42 U.S.C. § 1983 (R. 1). This Court has appellate jurisdiction under the collateral order doctrine because the district court's denial of qualified immunity is an appealable final decision under 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 525-30 (1985); *Green v. Newport*, 868 F.3d 629, 632 (7th Cir. 2017). A district court's denial of qualified immunity, to the extent it turns on an issue of law, is considered an immediately appealable "final decision." *Id.* at 524-30. This is because qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526. Consequently, if discovery does not reveal a genuine issue of material fact regarding the availability of qualified immunity, then the defendant public official is entitled to summary judgment on the issue. *Id.* Put differently, a motion for summary judgment is a defendant's "final opportunity to secure the full benefit of qualified immunity." *K.J. v. Wilhelm*, 425 F.3d 455, 466 (7th Cir. 2005). For this reason, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Here, denying K.J. and M.S.'s motion for summary judgment on qualified immunity grounds, the district court denied K.J. and M.S. the benefit of any such immunity from suit; as such, the decision was final, it is separable from the merits of Appellee's claims, and it would be, for all practical purposes, unreviewable following

a trial. *Mitchell*, 472 U.S. at 526-27. K.J. and M.S. timely filed their notice of appeal on January 8 2025. (R. 118).

On appeal, this Court can take the undisputed historical facts found by the district court and as proposed by the parties, drawing all reasonable inference in favor of Appellee, *Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005), and review the district court's application of the law to those facts, *Sain v. Wood*, 512 F.3d 886, 890-91 (7th Cir. 2008). *See also Harer v. Casey*, 962 F.3d 299, 305 (7th Cir. 2020) ("In this appeal, the [defendants] accept the facts and reasonable inferences favorable to [plaintiffs] for purposes of the qualified-immunity inquiry at this stage. They simply contend that those facts and inferences do not establish a violation of a clearly established constitutional right.") (internal quotation marks and citations omitted); *Lovett v. Herbert*, 907 F.3d 986, 991 (7th Cir. 2018) ("In order to present such an issue for appeal, the defendant may accept, for purposes of the qualified immunity inquiry, the facts and reasonable inferences favorable to the opponent of immunity, and argue that those facts fail to show a violation of clearly established law.") (internal quotation marks and citations omitted).

## STATEMENT OF THE ISSUES

Could a jury reasonably find that K.J. and M.S. violated clearly established law by arranging to meet with Appellee and contacting him at his cell door, when Appellee specifically requested a meeting to discuss information about a fellow inmate who was facing criminal charges related to a corrections officer that was beaten at the Columbia County Jail?

The district court answered this question: Yes.

8

**STATEMENT OF THE CASE**

In its summary judgment decision, the district court drew from the proposed findings of fact submitted by K.J. and M.S., which are undisputed except where contradicted by statements within Appellee' personal knowledge as set forth in his sworn complaint. (R. 111 at 2 n 3).

I.    **Appellee Contacts the Columbia County Sheriff's Office.**

In late 2022, Appellee began sending letters from Wisconsin Secure Protection Facility ("WSPF") to the Columbia County Sheriff's Office ("CCSO"), indicating that he had information about criminal activities at Columbia County Correctional Institute ("CCI"). (R. 111 at 2). K.J. was tasked with investigating those letters and following up with Appellee. (R. 111 at 2). In a letter dated November 10th, 2022, Appellee specifically claimed that an unnamed "defendant" had attempted to murder a former CCI Corrections Officer, and that unnamed "defendant" had asked for Appellee' assistance in carrying out the murder. (R. 111 at 2). In that same letter, Appellee also claimed that the same unnamed "defendant" was involved in an overdose death at CCI in 2020, and that that the unnamed "defendant" was also involved in trafficking drugs into the facility. (R. 111 at 2). Appellee asked to keep his identity and contents of his letter confidential out of "fear for [his] safety," and specifically asked that an "attorney call" be arranged through a WSPF employee to avoid any suspicion if they wished to speak with him. (R. 111 at 2-3).

K.J. investigated and learned that Lamar Anderson, a former inmate at CCI, had been criminally charged related to a December 2020 attack on a former CCI corrections officer and was set to proceed to trial on those charges in May 2023. (R.

9

111 at 3). (K.J. also learned that Appellee and Anderson were housed near each other at WSPF in cells 220 and 219). (R. 111 at 3).

On November 17, 2022, K.J. attempted to speak with Appellee over the phone, but Appellee refused to share any information because he believed the manner in which he was removed from his cell could have signaled to other inmates that he was a "snitch." (R. 111 at 3). Appellee requested that he be placed on a more secure "attorney phone," though K.J. did not attempt to do so and WSPF staff put him on a "general phone" at that time. (R. 111 at 3). A few days later, another call was placed in which K.J. did ask WSPF staff to put Appellee on the "attorney phone," however, Appellee again refused to talk with him once again. (R. 111 at 3).

Later in November 2023, Appellee sent K.J. another letter indicating that he had additional information about a planned escape and a 2014 murder at CCI that was disguised as an overdose. (R. 111 at 3). Appellee again requested that his identity be protected in this letter. (R. 111 at 3).

## II. K.J.'s Visit to Appellee at WSPF.

K.J. and another detective arranged to meet with Appellee at WSPF on December 6, 2022. (R. 111 at 3). K.J. body camera footage shows them waiting to meet with Appellee in a room at WSPF that had windows. (R. 111 at 3). When WSPF staff went to retrieve Appellee from his cell, he refused to speak with the detectives in the designated room. (R. 111 at 4). WSPF staff permitted K.J. to speak with Appellee at the door of his cell. (R. 111 at 4). When K.J. arrived at Appellee's cell door, he identified himself as "Detective K.J. from the Columbia County Sheriff's Department" and explained that he wanted to speak with Appellee about a letter he sent. (R. 111

10

at 4). At the time he went to Appellee's cell, K.J. was aware that Anderson was nearby. (R. 111 at 4). K.J. asked Appellee if he would like to speak privately away from his cell but Appellee declined. (R. 111 at 4). K.J. explained this would be Appellee's last opportunity to discuss the letters, but Appellee still refused. (R. 111 at 4). Upon Appellee's multiple refusals, K.J. decided to leave WSPF. (R. 111 at 4).

During his time at Appellee's cell door, K.J. did not reveal any information about the content of the letters Appellee had sent or any other information that would identify the specific purpose of K.J.'s visit. (R. 111 at 4). M.S. was not present at WSPF on December 6 and did not participate in K.J.'s decision to speak with Appellee at his cell door. (R. 111 at 4). Appellee asserts that, after K.J. visited his cell, Anderson and other inmates began to intimidate, threaten harass, and extort him. (R. 111 at 4).

## III.    Events after K.J.'s December 6, 2022 Visit to WSPF.

On December 16, 2022, Appellee sent another letter to the CCSO stating that he was unhappy that K.J. came to his cell door and threatened a lawsuit against K.J.. (R. 111 at 5). K.J. emailed WSPF staff about a week later, again asking to schedule a phone call with Appellee while maintaining the "clandestine nature" of Appellee's communications. (R. 111 at 5). On December 23, 2022, M.S. spoke to Appellee directly over the phone to better understand Appellee's version of K.J.'s December 6, 2022, visit. (R. 111 at 5). Appellee asserts that, during this conversation, M.S. apologized and "accepted responsibility" for K.J.'s conduct and explained that he and K.J. had decided the best way to let Anderson know he would be convicted at trial was to "out" Appellee as a snitch. (R. 111 at 5). Later on, in January 2023, K.J. sent Appellee a

11

letter explaining that Appellee would only be able to communicate with anyone at the CCSO via mail due to his lack of cooperation. (R. 111 at 5).

Appellee concedes he suffered no physical harm following K.J.'s visit to WSPF. (R. 111 at 11). Rather, Appellee asserts that he was harassed, threatened and intimated by Anderson and other inmates. (R. 111 at 4, 11).

## IV.     Procedural Posture.

Appellee filed this lawsuit in federal court, alleging that K.J. and M.S. violated his Eighth Amendment rights when they allegedly revealed him as a confidential informant. (R. 111 at 1). K.J. and M.S. filed motions for summary judgment on Appellee's claim that they exposed him to a substantial risk of harm in connection to the December 6, 2022, visit. (R. 111). On December 11, 2024, the Court denied the Defendants' summary judgment motion and determined that K.J. and M.S. were not entitled to qualified immunity. (R. 111). K.J. and M.S. now appeal the district court's ruling under the collateral-order doctrine.

## SUMMARY OF THE ARGUMENT

K.J. and M.S. are entitled to qualified immunity because no clearly established law existed at the time put them on notice their conduct would violate Appellee's rights, and this is not an obvious case. The district court found that an inference could be drawn that K.J. and M.S. "intentionally" outed Appellee as a "snitch" and, thus, a jury "could infer" that K.J. and M.S. intentionally or recklessly disregarded his right to be free from a substantial risk of harm, despite the fact that Appellee did not suffer any physical harm. The district court determined that there was no factual dispute; rather, Appellee's statements, "if credited by the jury," suggested an "inference" that

12

K.J. and M.S. were liable. (R. 111 at 5). Further, the district court relied on cases that do not "squarely govern" here. The cases the district court relied upon are premised upon finding that K.J. and M.S. *intentionally* outed Appellee as a snitch, which is not clear from the record. Because of the absence of any cases that "squarely govern" the facts that the district court found (along with other undisputed evidence), K.J. and M.S. are entitled to qualified immunity.

The district court's ruling should be reversed, and this Court should remand this case with instructions to grant K.J. and M.S. qualified immunity for the visit to Appellee's cell on December 6, 20222.

## ARGUMENT

### I. THE COURT REVIEWS SUMMARY JUDGMENT DECISIONS *DE NOVO.*

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court reviews the district court's denial of summary judgment on K.J. and M.S.'s qualified immunity defense *de novo.* See *Ybarra v. City of Chi.*, 946 F.3d 975, 978 (7th Cir. 2020). The evidence and all inferences that reasonably can be drawn from the evidence are construed in the light most favorable to Appellee. *Washington v. Haupert*, 481 F.3d 543, 547 (7th Cir. 2007). "The appellate court is not required to accept the facts as described by the district court." *Id.* at 549 n. 2. "[W]here the appellants are not asking the court to resolve factual disputes or determine whether the evidence is sufficient, it is appropriate for this court to look beyond the factual account of the district court to all undisputed evidence." *Id.* The appellate

13

court is not bound by the district court's ruling that the evidence supports a particular finding of fact. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. APPELLEE HAS NOT SHOWN A CONSTITUTIONAL VIOLATION.

The Eighth Amendment's prohibition on "cruel and unusual punishment" requires prison officials to take "reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). When a prison official becomes aware of a serious risk of harm, they have an affirmative obligation to "take reasonable measures to abate it." *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) (citing *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006)). However, a prison official's response can still be reasonable even if it fails to avert the harm posed by the risk. *Id.* To proceed on this claim, an inmate must show that prison officials acted with deliberate indifference to a substantial risk of harm to the inmate's health or safety. See *Farmer*, 511 U.S. 825, 114 S.Ct. 1970; see also *Dale*, 548 F.3d 563. The deliberate indifference requirement means "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014) (citing *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970).

This Court has consistently held, and the district court acknowledged, that an inmate who is not physically harmed, but only suffers a *risk* of physical harm, has no compensable claim under the Eighth Amendment. (R. 111 at 11-12); see *Saunders v. Tourville*, 97 F. App'x 648, 649 (7th Cir. 2004); *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996) ("failure to prevent exposure to risk of harm" when inmate's injuries are only psychological is not a compensable Eighth Amendment claim). "An allegation

14

that prison officials exposed a prisoner to a 'risk of violence at the hands of other inmates' does not implicate the Eighth Amendment's Cruel and Unusual Punishments Clause. *Doe V. Welborn*, 110 F.3d 520, 524 (7th Cir. 1997) (citing *Babcock*, 102 F.3d at 273) (internal citations omitted).

The district court found the Appellants were deliberately indifferent to a risk of harm to the Appellee based circumstantial evidence that Appellant's did not honor Appellee's request to be placed on a private phone, intended to meet with Appellee in a room with windows, and because K.J. identified himself as a detective at Appellee's cell door in front of Anderson after Appellee had expressed concerns for his safety. (R. 111 at 7). The district court concluded that Appellants should have known Appellee faced a substantial risk of serious harm from Anderson because Appellee told them that he had vague fears for his safety and wanted his identity protected. (R. 111 at 6-7).

Even though Appellee shared his abstract fears in his letters, Appellants did not work at WSPF and could know have known whether Appellee's statements were true. "[P]rison guards are neither required nor expected to believe everything inmates tell them." *Olson*, 750 F.3d at 713 (7th Cir. 2014) (citing *Riccardo v. Rausch*, 375 F.3d 521, 527 (7th Cir. 2004)). In *Olson*, this Court stated that if the defendant did not believe the plaintiff's warnings of a potential threat, "then he wasn't deliberately indifferent to any known risk; at most he might have been negligent if he failed to investigate a potential threat." *Olson*, 750 F.3d at 713. In that case, the defendant did investigate the potential threat by speaking to other guard's on duty who cast doubt on the plaintiff's warning, among other things. *Id*. This Court concluded that

15

"[i]t was logical for Sergeant Schneider to infer that Olson's warning was false, or at least exaggerated; without more evidence we can't see how a reasonable fact finder could conclude that [the guard] actually drew the opposite inference." *Id.* (citing *Lindell v. Houser*, 442 F.3d 1033, 1035 (7th Cir. 2006); *Riccardo*, 375 F.3d at 527).

Here, Appellee's claim is that the Appellants did not prevent the exposure to a risk of harm—a risk that never materialized. Even the district court acknowledged that any claim for psychological injury is conclusory. (R. 111 at 12). Thus, he has not set forth a cognizable claim under the Eighth Amendment. Further, Appellants cannot be said to have been deliberately indifference because there is no evidence they were aware of facts from which they could infer a substantial risk of harm existed. Appellants were not required to believe everything Appellee told them in his letters as to his fears for his safety, and they were not guards at WSPF or have any other knowledge of the daily interactions between the prisoners. In fact, K.J. asked WSPF staff for permission before going to Appellee's cell door, which was granted, leading to the logical conclusion that Appellants believed the visit posed no risk. There are no facts from which a reasonable jury could conclude that Appellants drew the opposite inference. This is further supported by that fact that Appellee did not suffer any actual, physical harm.

## III. K.J. AND M.S. ARE ENTITLED TO QUALIFIED IMMUNITY ON APPELLEE'S EIGHTH AMENDMENT FAILURE TO PROTECT CLAIM.

The United States Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The Court has explained that "government officials

16

performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Government officials possess qualified immunity from suit "as long as their actions could reasonable have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law." *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

There is a two-part test to determine whether qualified immunity should be granted to a governmental actor: (1) whether the plaintiff has established a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). The question of whether immunity attaches is a question of law. *Elder v. Holloway*, 510 U.S. 510, 516 (1994). If qualified immunity applies to an officer's conduct, "the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). It is Appellee's burden to show that the law was "clearly established" at the time of the incident. See *Schlessinger v. Salimes*, 100 F.3d 519, 523 (7th Cir. 1996). He has failed to do so in this case.

17

Law enforcement officers are entitled to qualified immunity for their actions if "a reasonable officer could have believed that [the action taken] was lawful, in light of clearly established law and the information the officers possessed." *Estate of Starks v. Enyart*, 5 F.3d 230, 233 (7th Cir. 1993). To show that a law was clearly established, a plaintiff must offer either a closely analogous case or evidence that the defendant's conduct was patently violative of a constitutional right that reasonable officials would know without guidance from a court. See *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

For a right to be clearly established, existing precedent at the time of the incident in question must have defined the "contours" of the right in a "sufficiently definite" manner that "any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79, 134 S.Ct. 2012 (2014). The law must have placed the constitutional question "beyond debate." *Id*. at 779. Otherwise, that is, "if officers of reasonable competence could disagree," then qualified immunity applies. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In this way, qualified immunity "leaves 'ample room for mistaken judgments by police officers,'" (*Id*. at 343) and protects all but the "plainly incompetent and those who knowingly violate the law." *Sheehan*, 575 U.S. at 611 (internal quotation marks and citation omitted).

A plaintiff can demonstrate a clearly established right in three ways: (1) identify a closely analogous case where a court has held that the alleged violation was unlawful; (2) identify relevant caselaw that demonstrates "such a clear trend … that [the court] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time"; or (3) demonstrate that the

18

defendants' conduct was "so egregious and unreasonable that no reasonable official could have thought he was acting lawfully." *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 620-21 (7th Cir. 2022) (internal quotations omitted).

Appellee must established that K.J. and M.S.'s visit to his cell door was a violation of a clearly established constitutional right as of December 6, 2022, to rebut K.J. and M.S.'s assertion of qualified immunity. Appellee cannot do so and K.J. and M.S. are entitled to qualified immunity.

### A. As of December 6, 2022, No Authority Had Clearly Established that Appellants' Conduct was Unconstitutional.

The dispositive question put before this Court is whether prior caselaw "clearly established" this right such that no "reasonable law enforcement officer would have believed that, at the time [the appellant officers] acted, [their] actions were within the bounds of the law." *Belcher v. Norton*, 497 F.2d 742, 749 (7th Cir. 2007), as amended (Nov. 19, 2007). In addition, the Seventh Circuit requires "caselaw which clearly and consistently recognizes the constitutional right." *Lojuk v. Johnson*, 770 F.2d 619, 629 (7th Cir. 1985) (internal quotation marks and citations omitted) (finding that one supporting circuit court case, one district court case and several other distantly related cases are insufficient to clearly establish a constitutional right). This requires the party opposing qualified immunity to identify some case which would clearly put the appellants on notice that their actions were unconstitutional. *Id.*

### i. There is no closely analogous case.

Appellee failed to cite, submit or otherwise even refer to any legal authority whatsoever in the context of his summary judgment briefing. While the district court

cited caselaw, the authority the district court cited falls woefully short of presenting a clearly established constitutional right implicated by K.J. and M.S.'s visit to his cell, and did not identify a single case in which the court held an officer acting in similar circumstances to those faced by K.J. and M.S. violated the constitution. (Contrary to the Supreme Court's mandate in *White v. Pauly*, 580 U.S. 73, 79, 137 S.Ct. 548, 552 (2017)).

In denying qualified immunity in this case, the district court concluded that "defendants acted with deliberate indifference to their creating a danger—harassment and threats from Anderson—that plaintiff would otherwise not have faced." (R. 111 at 11). The district court conflates the "state created danger" exception applied to substantive due process claims with the claims Appellee brought under the Eighth Amendment. It should be noted that the district court explicitly prohibited Appellee from proceeding on a failure to protect claim against K.J. and M.S. under the Eighth Amendment in its screening order:

> Appellee alleges that he wrote to both K.J. and M.S. that he was being threatened by other inmates at WSPF, that he asked him over the phone for protection, and that neither defendant took action to protect him. It is not enough that K.J. and M.S. should have known about a risk to Appellee's safety, Appellee would have to allege that these defendants actually knew of that risk … Appellee does not say that he informed either defendant about the nature of the threats or that he explained to either defendant that the other inmates—all of whom were house in segregation—would be able to carry out those threats. So it would be unreasonable to infer that either K.J. or M.S. was actually aware of a substantial risk to Appellee's safety, and Appellee does not state an Eighth Amendment failure to protect claim against them.

20

(R. 15 at 4-5) (citing *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008) (citing *Farmer*, 511 U.S. at 842-43)). Given the foregoing, it is inexplicable how the district court can deny qualified immunity now at summary judgment based on the premise that it could be inferred that K.J. and M.S. intentionally created a risk of harm to Appellee—outing him as a "snitch" and that a reasonable officer in their position would have known their conduct violated Appellee's rights under the Eighth Amendment, thus denying qualified immunity. The contradictory nature of the district court's conclusions in the screening order and denial of qualified immunity inherently demonstrates that, as of December 6, 2023, neither the law of this Circuit nor any consensus of cases from other circuits had placed the question here—the constitutionality of county law enforcement officers attempting to meet with an inmate at a state prison facility with permission of prison staff at a facility where they are not employees after inmate vaguely conveyed concerns about protecting his identity may have indirectly alerted other inmates that he was cooperating with law enforcement, thereby allegedly labeling him a "snitch" though he was never physically harmed—"beyond debate." *Plumhoff*, 572 U.S. at 779. This is illustrated by the authority cited by the district court.

For example, the district court cites *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998), in which a substantive due process claim was brought in the context of "state created danger" on behalf of a private citizen who was working as an anonymous informant and was killed by co-workers after police released a tape revealing he had reported employees for theft. (R. 111 at 10). The district court concluded that a defendant was not entitled to qualified immunity when "he created a danger

21

[plaintiff] would not otherwise have faced" by releasing the tape. (R. 111 at 10). First, as the district court notes, qualified immunity was denied in this case based on a substantive due process claim under the Fourteenth Amendment based on a non-custodial "state created danger," as opposed to an inmate's claims under the Eighth Amendment as is the case here. Second, the *Monfils* court based its analysis, in part, on the fact that the defendant affirmatively accepted the responsibility of making sure the tape was not released and, despite having the ability and authority to prevent its release, failed to take reasonable steps to do so:

> [Defendant] clearly created a danger and, by assuring Hitt
> (the assistant district attorney) that he would make sure
> the tape was released but not following through, he created
> a danger Monfils would not otherwise have faced.

*Monfils*, 165 F.3d at 518. Aside from the general proposition that K.J. and M.S. were aware that Appellee had concerns about his identity and requested anonymity in his requests to speak with them, K.J. and M.S. were not prison officials at WSPF, and they had virtually no control over the manner and method of Appellee's incarceration. Further, WSPF staff gave K.J. permission and instruction to contact Appellee at his cell door.

The district court also quotes *Merritte v. Kessel*, 561 App'x 546, 548 (7th Cir. 2014), in which this Court stated that"[b]randing an inmate a snitch *can* expose him to serious harm and *may* violate the Eighth Amendment." (R. 111 at 10) (emphasis added). In that case, the plaintiff sought injunctive relief asserting that the warden refused to transfer him or take protective measures after he was subject to harassment from officers and faced credible threats from other inmates because, among other things, two officers referred to him as "stooly," subjecting him to a risk

of serious harm. *Id*. In denying his motion for injunctive relief, the district court considered that he had not identified the inmates who threatened him, provided a copy of a threatening note he purported to have received, and had not been attacked by any inmate, thus he did not show he faced irreparable harm. *Id*. at 547. The Seventh Circuit clearly stated it was "not expressing an opinion on the merits," but determined that the district court failed to consider certain evidence presented by the plaintiff that was relevant to his claims—in particular, affidavits from five fellow inmates that he was known as a snitch. *Id*. The Seventh Circuit explicitly stated that "we express no opinion about the merits of the claim, but [plaintiff] is entitled to an evaluation of it by the district court in the first instance." *Id*. at 547-48.

As in *Monfils*, the circumstances of *Merritte* have little, if any, relevance to the circumstances confronted by K.J. and M.S.h as they were not officials at WSPF and did not directly tell other inmates that Appellee was a snitch or was otherwise providing information to law enforcement, nor does ever Appellee allege as much.

The district court similarly quotes *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008), stating the defendant "was on fair notice that to falsely label inmate a snitch is to unreasonably subject that inmate to the threat of substantial risk of serious harm at the hands of fellow inmates." However, *Irving* is largely inapposite to this case as the Eighth Circuit considered the retaliatory conduct of the official and totality of the conduct (allowed another inmate to attack plaintiff, threats to kill plaintiff or have him killed, bribing other inmates to assault plaintiff) in addition to the affirmative attempts in labeling the plaintiff a snitch. See *Id*. In fact, in explaining its reasons for concluding that the district court correctly denied qualified

23

immunity, the Eighth Circuit did not even mention the defendant prison officials labeling the plaintiff a snitch:

> It was clearly established … that a guard is not permitted to threaten an inmate with death by means of arming, bribing and inciting other inmates to accomplish that which the guard may not do directly. No reasonable prison guard would have believed that no constitutional right would be violated by such conduct, and thus the district court correctly denied qualified immunity to [the defendant].

*Id.* at 450. To the contrary, the *Irving* court acknowledged that the Seventh Circuit has not recognized an inmate's label as a "snitch" as being an actionable claim under the Eighth Amendment. *Id.* at 455. Further, the *Irving* court noted that, in denying qualified immunity, the prison official defendants were in a unique position to be able to identify and understand the risks of being labeled a snitch from their daily interactions with the prison population. *Id.*

Again, this case is inapposite because K.J. and M.S. did not take affirmative actions to inform Anderson or any other inmate that Appellee was working with them, did not threaten Appellee, and they did not interact with any other WSPF inmates so as to be aware of the daily occurrences there.

The district court also cites *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001), which echoes *Irving* in that "labeling an inmate as a snitch satisfies the *Farmer* standard and constitutes deliberate indifference to the safety of that inmate." Foremost, in *Benefield*, the court denied qualified immunity on a the less exacting standards of a motion to dismiss—whether the plaintiff alleged sufficient facts that, taken as true, would establish a constitutional violation—<u>not</u> summary judgment. (R. 111 at 11). The Tenth Circuit's holding was simply that, at the pleadings stage, the

24

district court did not error in denying qualified immunity. *Benefield*, 241 F.3d at 1272.

Further, the sentence preceding the district court's quoted passage provides essential

context to the Tenth Circuit's rationale:

> There is no dispute that the law *in this circuit* addressing this issue was well-established at the time of defendant's conduct. In *Northington*, we specifically held that labeling an inmate a snitch satisfies the *Farmer* standard, and constitutes deliberate indifference to the safety of that inmate.

*Benefield*, 241 F.3d at 1271 (emphasis added). Not only is *Benefield* dissimilar in that

it was decided at a different stage of litigation and confined to decisions in the Tenth

Circuit, but the court has distinguished its ruling in the 25 years since it was decided.

The Tenth Circuit distinguished *Benefield* seven years later in an unpublished

decision in *Szymanski v. Benton*, 289 F. App'x 315, 320 (10th Cir. 2008), in which it

found that the plaintiff-inmate did not establish a substantial risk of harm when he

did not inform prison guards of his perceived risk of harm from a fellow inmate

because he did not inform the guards that he feared for his safety. In *Syzmanski*, the

plaintiff-inmate was attacked by another inmate whom he was involved in a prior

altercation after prison staff moved his attacker to a cell near his cell despite a "keep

separate" order. *Id*. The plaintiff conceded he did not tell the prison guard defendants

he feared for his safety, but argued they should have been aware his attacker posed

a risk of harm by virtue of the verbal altercation, and that announcing his fears to

prison staff would have exposed him as a "snitch," and that the defendants were liable

because a prison official would not require an inmate out himself as an "informant"

to get protection. *Id.*. The Tenth Circuit rejected the plaintiff's argument because,

unlike *Benefield* where the guards actively informed other inmates that the plaintiff

25

in that case was a snitch and encouraged other inmates to inflict physical violence, the plaintiff in *Szymanski* did not allege that he was unable to private request protection, thus the "snitch" label in and of itself did not violate the "clearly established law" implicated in *Benefield*. See *Id*. at 320.

At a minimum, the tension between *Benefield* and *Szymanski* illustrates that the Eighth Amendment is not violated because an inmate is labeled as a snitch, much less because that inmates perceives he will be labeled as a snitch by virtue of circumstances presented by a prison official's conduct; rather, the inquiry turns on whether the prison official took clear, affirmative steps to label that inmate as a snitch, and knew the risks that the label posed to the inmate but proceeded with those actions anyway. See *Szymanski*, 289 F. App'x at 319-20. Despite the district court's blanket quote from *Benefield* attempting to assert that any prison official's conduct that labels an inmate a snitch violates the Eighth Amendment, the tension between these cases establishes that K.J. and M.S.'s conduct was not so unconstitutional so as to be "beyond debate." Moreover, the above cases all involve individuals and inmates who suffered physical harm or were determined to have faced credible threats—generally created by the prison officials themselves—which is not the case here.

The above cases cited by the district court—*Monfils*, *Merritte*, *Irving*, and *Benefield*—read together, did not establish the contours of exposure to a risk of harm under the Eighth Amendment in a sufficiently definite manner such that any reasonable officer in K.J. and M.S.'s position would have understood they were violating the Eighth Amendment; thus, neither the district court nor Appellee

26

identified or relied upon any relevant caselaw that involved a closely analogous set of facts.

Moreover, neither the district court nor Appellee has set forth any legal authority that would have put K.J. and M.S. on notice that their actions in investigating Appellee's tips by going to his cell door would violate Appellee's Eighth Amendment rights. Additionally, neither the district court nor Appellee have pointed to any trends in relevant caselaw that stand for the proposition that the "state created danger" exception in the context of a substantive due process claim can be grounds for the denial of qualified immunity in cases concerning a prisoner's claims under the Eighth Amendment, or that an officer's conduct investigating tips from an inmate that may indirectly make other inmate's suspicious of a fellow inmate, but does not result in physical harm, amounts to a knowing disregard of that inmate's health and safety. In fact, the authority cited by the district court demonstrates that even prison officials who actually labeled inmates "snitches" did not *clearly* violate the Eighth Amendment. *Merritte*, at 548 (branding an inmate as a snitch *can* subject them to a risk of harm, which *may* violate the Eighth Amendment). At a minimum, reasonable officers could well disagree about the lawfulness of K.J. and M.S.'s conduct, and the issue of whether it was unconstitutional is hardly beyond debate. As such, K.J. and M.S. are entitled to qualified immunity.

> **ii. K.J. and M.S.'s Conduct was not so egregious or unreasonable that no reasonable official could have thought they were acting lawfully.**

This is not one of those "rare cases" where the public officials' conduct is so egregious that its unconstitutionality would have been obvious to any reasonable

officer without the need for any precedent on point. *Leiser v. Klotch*, 933 F.3d 696, 702 (7th Cir. 2019). In *Leiser*, this Court set forth two cases as examples of egregious conduct: first, in *Hope v. Pelzer*, 536 U.S. 709, 739-46 (2002), prison guards handcuffed an inmate to a hitching post for seven hours, exposed him to sun, deprived him of water, denied him bathroom breaks, and subjected him to other cruelty; second, *Abbott v. Sangamon County*, 705 F.3d 706, 723-24 (7th Cir. 2013), in which a police officer tased a nonviolent subject who did not respond to instructions to turn over after being tased a first time. Both of those cases involved egregious, intentional abuses of power. K.J. and M.S.'s conduct, on the other hand, is nowhere near the extreme actions presented in those cases. Even assuming they violated Appellee's Eighth Amendment rights, the unconstitutionality of their conduct was nowhere near so obvious as to put this case in the same category as that in *Hope* and *Abbot*.

**B.      The District Court's Purported Dispute of Fact is Unsupported.**

Finally, the district court stated that whether Appellee's assertion that "M.S. admitted" the intent of the visit was to "out" Appellee was true is a question for the jury. (R. 111 at 6). It was undisputed by the parties that M.S. discussed the visit with Appellee over the phone, but the district court relied on Appellee's assertion in denying qualified immunity; although there is no evidence in the record to support that assertion. Regardless, the district court's reference to a disputed fact is not automatically disqualifying, whereas, here, Appellee failed to respond and the district court accepted K.J. and M.S.'s facts as undisputed. *Smith v. Finkley*, 10 F.4th 725, 735 (7th Cir. 2021).

28

While a pro se litigant is entitled to a liberal interpretation of their pleadings, in response to a motion for summary judgment, they must present evidence that presents a genuine e issue of material fact. See *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011) ("[A plaintiff's] pro se status doesn't alleviate his burden on summary judgment.")) (citations omitted). Even though the court draws all reasonable inferences in favor of and views the record in the list most favorable to the non-moving party, the nonmovant is only entitled to inferences in their favor that are supported by admissible evidence not speculation, conjecture or conclusions not grounded in specific facts. See *Bordelon v. Bd. of Educ. Of the City of Chicago*, 811 F.3d 948, 989 (7th Cir. 2016) (nonmovant not entitled to favorable inferences based on "[c]onclusory statements[] not grounded in specific facts"); *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (nonmovant not entitled to favorable inferences that are based on speculation or conjecture rather than admissible evidence). The district court, in denying qualified immunity, relies on Appellee's bare assertion that M.S. "admitted" their intention was to out him as an snitch—apparently in an elaborate, yet unfounded, scheme to put the full-court-press on Anderson to enter a guilty plea—which is not supported by any citation to the record.

Even if Appellee's assertion is true, that M.S. admitted their intention was to alert Anderson that Watt's was giving law enforcement information about him, neither Appellee nor the district court have cited any *facts* that show K.J. and M.S. were aware that visiting Appellee's cell put him at a risk of harm at WSPF (from Anderson or any other inmate for that matter), nor that a jury could conclude, beyond speculation, their conducted violated any constitutional right held by Appellee.

29

## CONCLUSION

This Court should reverse the district court's order denying K.J. and M.S. qualified immunity as to the visit to Watt's cell and remand this case to the district court with instructions to enter judgment for K.J. and M.S..

Dated this 24th day of February, 2025.

CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants-Appellants, K.J. and M.S.

By:     *s/Steven C. McGaver*
       STEVEN C. MCGAVER
       Counsel of Record
       WI State Bar No. 1051898
       SAMUEL C. HALL, JR.
       WI State Bar No. 1045476
       710 N. Plankinton Avenue, Suite 500
       Milwaukee, WI 53203
       Phone: 414-271-7722
       Fax: 414-271-4438
       Email: shall@crivellolaw.com
           smcgaver@crivellolaw.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7), FRAP RULE 32(g), FRAP RULE 32(c)

The undersigned, counsel of record for the Defendant-Appellant, furnishes the following in compliance with F.R.A.P. Rule 32(a)(7) and C.R. 32(c):

I hereby certify that this brief conforms to the type-volume rules contained in F.R.A.P. Rule 32(a)(7) and 7th Circuit Rule 32(c) for a brief produced with a proportionally spaced 12-point or larger type-face fond. The length of this brief is __6,865__ words.

Respectfully submitted this 24th day of February, 2025.

CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants-Appellants, K.J. and M.S.

By: ___s/Steven C. McGaver___
STEVEN C. MCGAVER
Counsel of Record
WI State Bar No. 1051898
SAMUEL C. HALL, JR.
WI State Bar No. 1045476
710 N. Plankinton Avenue, Suite 500
Milwaukee, WI 53203
Phone: 414-271-7722
Fax: 414-271-4438
Email: shall@crivellolaw.com
        smcgaver@crivellolaw.com

31

# PROOF OF SERVICE

Pursuant to Cir. R. 31(e), I e-filed a digital copy of the brief in searchable PDF format via the ECF System and Served all counsel of record with the digital version via CM/ECF system.

Respectfully submitted this 24th day of February, 2025.

> CRIVELLO, NICHOLS & HALL, S.C.
> Attorneys for Defendants-Appellants, K.J. and M.S.
>
>
> By: ___*s/Steven C. McGaver*_____
> STEVEN C. MCGAVER
> Counsel of Record
> WI State Bar No. 1051898
> SAMUEL C. HALL, JR.
> WI State Bar No. 1045476
> 710 N. Plankinton Avenue, Suite 500
> Milwaukee, WI 53203
> Phone: 414-271-7722
> Fax: 414-271-4438
> Email: shall@crivellolaw.com
> smcgaver@crivellolaw.com

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix.

Respectfully submitted this 24th day of February, 2025.

CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants-Appellants, K.J. and M.S.

By: _s/Steven C. McGaver_

STEVEN C. MCGAVER
Counsel of Record
WI State Bar No. 1051898
SAMUEL C. HALL, JR.
WI State Bar No. 1045476
710 N. Plankinton Avenue, Suite 500
Milwaukee, WI 53203
Phone: 414-271-7722
Fax: 414-271-4438
Email: shall@crivellolaw.com
smcgaver@crivellolaw.com

## REQUIRED SHORT APPENDIX TABLE OF CONTENTS

Opinion and Order dated May 24, 2023 ....................................... APP 001-014

Decision and Order Denying Defendants' Motion for Summary
Judgment dated December 11, 2024 ............................................. APP 015-020

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

APPELLEE,

|  |  |  |
|---|---|---|
| | Plaintiff, | OPINION AND ORDER |
| v. | | |
| | | 23-cv-87-wmc |
| K.J. and M.S., | | |
| | Defendants | |

Representing himself, [Appellee] brings this lawsuit against Columbia County Sheriff Detectives [K.J.] and [M.S.] for intentionally or recklessly revealing him to be a confidential informant ("CI") against another inmate.[1] While the court previously granted [Appellee] leave to proceed on his Eighth Amendment claims against defendants, both have since moved for summary judgment.[2] (Dkt. #73.) The court will deny defendants' motion because a reasonable jury could find defendants deliberately indifferent to [Appellee] safety, and defendants are not entitled to qualified immunity. However, [Appellee] will be limited to seeking $1 in nominal damages plus any punitive damages awarded at trial. [Appellee]'s motion for sanctions against defendants' attorneys (dkt. #106) will also be denied for the reasons explained below.

---

[1] [M.S.] asserts that [Appellee] never served as a CI for him ([M.S.] Decl. (dkt. #77) ¶ 10), but the court refers to [Appellee] as a "CI" given the pejorative connotation of "snitch."

[2] The court also granted [Appellee] leave to proceed against four Wisconsin Secure Program Facility employees on Eighth Amendment grounds (dkt. #15), but it earlier granted those defendants' motion for summary judgment based on a failure to exhaust administrative remedies. (Dkt. #72.)

UNDISPUTED FACTS[3]

## A. Background

At the times relevant to this lawsuit, [Appellee] was incarcerated at the Wisconsin Secure Program Facility ("WSPF") in Grant County, Wisconsin, while [M.S.] and [K.J.] were employed by the Columbia County Sheriff's Office ("CCSO") as a detective and detective trainee, respectively.   As a trainee, [K.J.] reported to [M.S.].   Columbia Correctional Institution ("CCI"), where [Appellee] was previously and is now again incarcerated, is in Columbia County, Wisconsin.

In late 2022, [Appellee] began sending letters from WSPF to the CCSO, suggesting that he had information about criminal activities at CCI.   [K.J.] was tasked with investigating those letters and following up with [Appellee].   In a November 10 letter, [Appellee] specifically claimed that an unnamed "defendant" had attempted to murder a former CCI Corrections Officer and had asked [Appellee] to help kill her.   [Appellee] further claimed that the same defendant was involved in an overdose death at CCI in 2020 and was also trafficking drugs there.   In passing along this information, [Appellee] specifically asked to keep his identity and the contents of his letter confidential out of "fear for [his] safety," and he asked in

---

[3] The following facts are drawn from the parties' proposed findings of fact and are undisputed unless otherwise noted.  [Appellee] did not respond to defendants' proposed findings of fact, so the court treats those facts as undisputed except where contradicted by statements within [Appellee]'s personal knowledge as set forth in his sworn complaint. (Preliminary Pretrial Packet (dkt. #30) 5 ("Unless the responding party puts into dispute a fact proposed by the moving party, the court will conclude that the fact is undisputed.").)  Further, defendants fairly point out that many of [Appellee] proposed findings of fact are argumentative, conclusory or cite to no evidence, and those objections are upheld. *See* Proc. to be Followed on Mot. For Summ. Judg., § II(C), (E); *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2011) (courts are to consider only evidence set forth in proposed finding of fact with proper citation); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018) (disregarding "submissions that make legal arguments and assert legal conclusions").

2

particular to set up an "attorney call" through a WSPF employee to avoid any suspicion if detectives wanted to talk to him.  (Defs.' Ex. A (dkt. #76-1) 2.)

After investigating, [K.J.] confirmed that CCI inmate, [L.A.], had been criminally charged for a December 2020 beating of a former corrections officer and a trial on those charges was set to proceed in May 2023.  Prison staff further told [K.J.] that [Appellee] and [L.A.] were housed near to one another at WSPF in cells 220 and 219, respectively.  On November 17, Detective Trainee [K.J.] attempted to speak with [Appellee] over the phone, but he refused to share any information over the phone, believing that the way prison staff removed him from his cell for the call could have signaled to other inmates (including [L.A.]) that he was a "snitch."  Instead, [Appellee] requested to be placed on a more private "attorney phone," but [K.J.] wrote that this was "not attempted" and WSPF staff had instead put him on a "general phone."  (Defs.' Ex. H (dkt. #76-8) 5.) For their call a few days later, [K.J.] did ask WSPF staff to put [Appellee] on the "attorney phone." Apparently spooked, however, [Appellee] again refused to talk with him. (*Id.* at 4-5.)

Nevertheless, later in November of 2023, [Appellee] sent [K.J.] a follow-up letter indicating that he had additional information about a planned escape and a 2014 murder at CCI disguised as an overdose.  Once again, [Appellee] also requested that his identity be protected.  (Defs.' Ex. B (dkt. #76-2) 4.)

**B.  Detective Trainee [K.J.] Meeting at [Appellee]'s Cell Door**

Detective Trainee [K.J.] and another detective were scheduled to meet with [Appellee] on December 6, 2022.  When they arrived at WSPF that day, however, [K.J.]' body camera footage shows them waiting to meet with [Appellee] in a room with windows. (Defs.' Ex. D

3

(dkt. #76-4).)   When WSPF prison staff attempted to retrieve [Appellee] from his cell, he refused to speak with the detectives in the designated room.   So, prison staff instead allowed [K.J.] to speak with [Appellee] at the door of his cell.

At the cell door, despite having previously been advised that inmate [L.A.] was in the next cell over, [K.J.] proceeded to identify himself to [Appellee] as "Detective [K.J.] from the Columbia County Sheriff's Department" and explain that he wanted to speak with [Appellee] about a letter he sent.   ([K.J.] Decl. (dkt. #76) ¶ 33.)   [K.J.] also asked if [Appellee] would like to speak privately away from his cell, but with [L.A.] so close, he refused. Even after [K.J.] explained that this would be [Appellee]' last opportunity to discuss the letters he had sent, [Appellee] refused to speak with [K.J.].   At that point, [K.J.] left WSPF.

Still, during their brief conversation at his cell door, [K.J.] revealed no information about the content of the letters that [Appellee] had sent or any other information that would identify the specific purpose of [K.J.] visit.   Moreover, Detective [M.S.] was not at WSPF on December 6 and apparently did not participate in [K.J.]'s decision to speak with [Appellee] at his cell door.   ([M.S.] Decl. (dkt. #77) ¶ 21.)[4]   Regardless, after [K.J.]' visit to his cell, [Appellee] asserts that [L.A.] and his friends began to intimidate, threaten, harass, and extort him.  (Compl. (dkt. #1) 8-9.)

---

[4] While [Appellee] alleges that [K.J.], [M.S.] and WSPF staff had a conference call where they agreed to have [K.J.] talk with [Appellee] at his cell door (Compl. (dkt. #1) 6), it is now apparent at summary judgment that [Appellee] lacks any personal knowledge as to whether [K.J.] conferred with [M.S.] before visiting his cell.   Nor does [Appellee] offer any other evidence in support of this allegation, except perhaps a possible inference that as a trainee [K.J.] may have talked to his supervisor, Detective [M.S.], before proceeding to [Appellee]'s cell door.   Regardless, as set forth in the next paragraph, [Appellee] asserts that [M.S.] later admitted he had decided with [K.J.] to "out" [Appellee] as a snitch to pressure [L.A.] to plead out before his upcoming criminal trial.

4

On December 16, [Appellee] sent the CCSO another letter, this time stating that he was unhappy that [K.J.] came to his cell and threatening to sue.  About a week later, [K.J.] e-mailed WSPF staff, again asking to schedule a phone call with [Appellee] while maintaining the "clandestine nature" of his communications.  Detective [M.S.] then talked directly with [Appellee] on the phone on December 23, ostensibly to better understand his version of the cell door incident on December 6.  During this conversation, [Appellee] asserts that [M.S.] apologized and "accepted responsibility" for [K.J.] actions, but explained that [K.J.] and he had decided the best way to let [L.A.] know that he would be convicted at trial was to "out" [Appellee] as their snitch.  (*Id.* at 10.)  Finally, in January 2023, Detective [K.J.] sent [Appellee] a letter explaining that he would only be able to communicate via mail with anyone from the CCSO due to his past lack of cooperation.

OPINION

A party is entitled to summary judgment if the movant shows that there is no genuine dispute as to any material fact, and judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the moving party makes a showing that the undisputed evidence establishes their entitlement to judgment beyond reasonable dispute, then to survive summary judgment, the non-moving party must provide contrary evidence "on which the jury could reasonably find for the nonmoving party." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009) (alteration adopted and quotation marks omitted).

The Eighth Amendment prohibits officials from consciously disregarding a substantial risk of serious harm to an inmate.  *Farmer v. Brennan*, 511 U.S. 825, 828, 839

5

(1994).  Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *see also Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006) (standard is "akin to criminal recklessness, which requires that the defendant be aware of and disregard an excessive risk of serious harm to the inmate").  "Branding an inmate a snitch can expose him to serious harm and may violate the Eighth Amendment."  *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014).  Plaintiff's Eighth Amendment claims here center on then-Detective Trainee [K.J.]'s visit to his cell on December 6, 2022.

Before turning to the merits of plaintiff's Eighth Amendment claims, the court will briefly address a preliminary issue.  Although defendants do not expressly make this argument, it is undisputed that Detective [M.S.] was *not* at WSPF on December 6, and "[t]here is no such thing as *respondeat superior* liability for government officials under § 1983."  *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021).  In fact, except for Smit's claimed admission that [K.J.] and he both decided to "out" plaintiff to pressure third-party [L.A.] into admitting his guilt in the separate criminal case pending against him, plaintiff offers *no* evidence of Smit's participating in [K.J.]'s decision to go to [Appellee]'s cell door where [L.A.] might hear, nor in [K.J.]'s other, ham-handed attempts to speak with [Appellee] at CCI.  Still, if a jury were to credit Smit's statement that [K.J.] acted at his direction, there is enough circumstantial evidence of Smit's personal involvement to establish his liability as Jones's direct trainer.  *Id.* at 494 ("Personal involvement in a subordinate's constitutional violation requires supervisors to know about the conduct and facilitate it, approve it, [or] condone it . . . ." (quotation marks omitted)).

App006

I.      Merits

To overcome defendants' motion for summary judgment, plaintiff must provide evidence from which a reasonable jury could conclude defendants both knew of and deliberately disregarded a substantial risk of serious harm to plaintiff's health or safety. *See Gevas v. McLaughlin,* 798 F.3d 475, 480 (7th Cir. 2015).  Said another way, plaintiff must show: (1) defendant was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed; and (2) he must also have drawn that inference. *Farmer,* 511 U.S. at 837.

Here, plaintiff claims that defendants deliberately exposed him to a substantial risk of serious harm by repeatedly attempting to speak with him openly and ultimately coming to his cell to speak with him almost literally in front of [L.A.].  Given all the circumstantial evidence here, a reasonable jury could conclude that one or both defendants were deliberately indifferent.  *First*, [K.J.] did not honor plaintiff's request to be secretly placed on a private, confidential phone call from the very beginning.  *Second*, [K.J.] sought to meet with plaintiff in a room with windows near plaintiff's cell block -- though [K.J.]'s body camera footage shows Anderson's cell was not close to the interview room.  Indeed, it was behind a locked door, which would have made it difficult, if not impossible for [L.A.], if not other inmates, to view any interview in that room. (Defs.' Ex. D (dkt. #76-4) 00:00-01:15.)  *Third*, [K.J.] identified himself as a detective and explained that he was responding to a letter plaintiff had written when [K.J.] *knew* that the subject of the letter, [L.A.], was in a nearby cell.  *Finally*, viewing the evidence in a light most favorable to plaintiff, a reasonable jury might infer that [K.J.] did this to convince [L.A.] that he would be convicted at trial, which would also allow a reasonable jury to infer that

7

defendants were deliberately indifferent to the fall out for [Appellee] should he become known as a "snitch."[5]

In fairness to defendants, when [K.J.] eventually spoke with plaintiff at his cell door, he only identified himself as "Detective [K.J.] from the Columbia County Sheriff's Office," then said that he wanted to speak with plaintiff about the letter he had sent. ([K.J.] Decl. (dkt. #76) ¶ 33.)  [K.J.] did not refer to the substance of plaintiff's letters, much less reveal that he had provided confidential information about *[L.A.]*.  *See Glover v. Schraufnagel*, 720 F. App'x 312, 313 (7th Cir. 2018) (prison official did not violate the Eighth Amendment when he mentioned plaintiff in a conduct report but did not imply that he was a CI).

Still, plaintiff argues that defendants knew or should have known of the risk that other prisoners would believe the reason for local law enforcement's efforts to talk with him was because he was a "snitch," especially with [L.A.] facing an imminent criminal trial in Columbia County for a past assault at CCI.  (Pl.'s Resp. Br. (dkt. #100) 3).   Of course, plaintiff lacks personal knowledge as to what defendants knew or actually thought; under all the circumstances here, however, a reasonable jury might infer just that.   In particular, if the jury were to credit plaintiff's testimony that [M.S.] *admitted* defendants' motivation was to "out" plaintiff to pressure [L.A.] to plead out on criminal charges

---

[5] There is at least some reason to doubt the accuracy of plaintiff's information about [L.A.], if any. He had previously sent letters to the CCSO, claiming to have information on crimes he saw reported on television, but the information he provided was not useful. ([M.S.] Decl. (dkt. #77) ¶¶ 12, 14.)  Moreover, prison records show that plaintiff and [L.A.] were last housed together at CCI in May 2019, while [L.A.] allegedly beat a former corrections officer in December 2020, making it unlikely that [L.A.] had recruited [Appellee] to help him with an attack.   *See* https://appsdoc.wi.gov/lop/details/detail (last visited Nov. 13, 2024).

8

that were ongoing at the time of the events underlying this case, then it could certainly infer defendants' actual intent to risk plaintiff's psychological or physical torment by [L.A.], if not other inmates.   *See* https://wcca.wicourts.gov/caseDetail.html?caseNo= 2021CF000134&countyNo=11&index=0&mode=details (last visited Dec. 11, 2024).

Even if a jury could find that [K.J.] and [M.S.] had branded plaintiff as a snitch by identifying [K.J.] as a detective *and* mentioning that plaintiff had sent letters to the CCSO, defendants also argue that [K.J.]'s actions could be found *at most* to be negligent or grossly negligent as opposed to an act of deliberate indifference to plaintiff's safety as required under an Eighth Amendment claim.   *See Berry*, 604 F.3d at 440 (conscious disregard involves intentional or reckless conduct, not mere negligence).   For reasons already discussed, however, that question is for a jury to decide, especially if the jury credits plaintiff's assertion that [M.S.] later admitted [K.J.] acted deliberately at his direction, and that [M.S.] accepted full responsibility for these actions, as well as apologized for [K.J.]'s actions.   *See Childs v. Rudolph*, No. 22-CV-572-JDP, 2024 WL 639859, at *6 (W.D. Wis. Feb. 15, 2024) (defendant corrections officer "consciously created the risk by repeatedly calling him a snitch in front of other inmates").   Thus, defendants are not entitled to summary judgment on the merits of plaintiff's Eighth Amendment claims on this ground either.

## II.   Qualified Immunity

This leaves one more hurdle for plaintiff to clear before proceeding to trial: defendants' assertions of qualified immunity.   Qualified immunity protects government officials from liability for damages unless they "violate clearly established statutory or constitutional rights."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   Further, once the

9

defense of qualified immunity is raised, *plaintiff* bears the burden of defeating it by showing that: (1) the defendant violated a constitutional right; and (2) the constitutional right was clearly established at the time of the violation. *Garcia v. Posewitz*, 79 F.4th 874, 879 (7th Cir. 2023). Plaintiff can meet this burden by pointing to either: (1) a closely analogous, binding case decided in his favor; or (2) a more general constitutional rule that applies "with obvious clarity" to defendants' particular conduct. *Cibulka v. City of Madison*, 992 F.3d 633, 639-40 (7th Cir. 2021). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

As discussed above, when taken in a light most favorable to plaintiff, the evidence of record allows for a reasonable inference that defendants intentionally outed plaintiff as a CI to [L.A.], while disregarding the risk that decision posed to plaintiff. At this point, that inference precludes the court from finding defendants are entitled to qualified immunity. The Seventh Circuit has recognized that "snitches face unique risks in prison," *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008). For example, in *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998), a case involving a substantive due process claim, the Seventh Circuit held that a defendant was not entitled to qualified immunity when "he created a danger Monfils would not otherwise have faced" by releasing a police tape revealing Monfils had reported a co-worker for stealing. *Id*. at 514-15, 518; *see also Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) ("Branding an inmate a snitch can expose him to serious harm and may violate the Eighth Amendment."); *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008) (defendant "was on fair notice that to falsely label an inmate a snitch is to unreasonably subject that inmate to the threat of a substantial risk of serious harm at

10

the hands of his fellow inmates"); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) ("labeling an inmate a snitch satisfies the *Farmer* standard, and constitutes deliberate indifference to the safety of that inmate").  When taken together, these cases are sufficiently analogous to defeat qualified immunity should the jury find that defendants acted with deliberate indifference to their creating a danger -- harassment and threats from [L.A.] -- that plaintiff would otherwise not have faced.

## III.    Damages

While [L.A.] harassed and threatened plaintiff after arguably being "outed" by defendant Jones's actions, plaintiff appears to concede that he ultimately suffered no *physical* harm, but rather asserts that he suffered psychological harm and a "real threat" of future, physical harm.  [Appellee] cannot receive compensatory damages for mental harm alone because the Prison Litigation Reform Act bars recovery for this harm without a showing of physical injury as well.  *See* 42 U.S.C. § 1997e(e) ("[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered . . . without a prior showing of physical injury"); *Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012).

Generally, "[p]rison officials who recklessly expose a prisoner to a substantial risk of a serious physical injury violate his Eighth Amendment rights, and therefore are subject to those remedies that are not barred by section 1997e(e)," including injunctive relief, as well as nominal and punitive damages.  *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011).  However, a "failure to prevent exposure to risk of harm," when plaintiff's actual injuries are only psychological, typically does not give rise to a compensable Eighth Amendment claim.  *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996).  Indeed, as defendants point

out, "it is the reasonably preventable assault itself, rather than the fear of an assault, that gives rise to a compensable claim under the Eighth Amendment." *Id*.; *Saunders v. Tourville*, 97 F. App'x 648, 649 (7th Cir. 2004) ("The standard in this circuit is clear: an inmate who suffers only a risk of physical harm has no compensable claim under the Eighth Amendment.").

In *Babcock*, however, the Sevent Circuit distinguished claims in which a prisoner alleges a mere "failure to prevent exposure to risk of harm," which does not state an Eighth Amendment claim, from claims in which a prisoner alleges that an officer intentionally inflicts psychological torture, which can state an Eighth Amendment claim even without the prisoner suffering physical harm. 102 F.3d at 272-73 (using the example of an officer "placing a revolver inside an inmate's mouth" as the type of "malicious and sadistic behavior" that would always violate the Eighth Amendment); *Turner v. Pollard*, 564 F. App'x 234, 238-39 (7th Cir. 2014) (summary judgment inappropriate where defendant urged other inmates to attack plaintiff, but in the end, he was not physically harmed, because plaintiff might still have been eligible for nominal or punitive damages given the danger to which defendant exposed plaintiff); *Bolden v. Mezo*, No. 22-1571, 2023 WL 4488861, at *2 (7th Cir. July 12, 2023) ("a prisoner who lacks a physical injury might recover punitive or nominal damages if a defendant psychologically injured him").

Admittedly, it is a close question here whether plaintiff has compensable claims when Anderson's threats never materialized into physical harm to plaintiff, and he only offers a conclusory assertion of even psychological harm. Nevertheless, it is reasonable to infer defendants (or at least [K.J.]) knew or should have known plaintiff would suffer ongoing, psychological harm once outed as a CI within earshot of [L.A.], especially

12

considering Anderson's known, violent tendencies and impending criminal trial. *See Childs*, 2024 WL 639859, at *6 (allowing plaintiff to proceed with Eighth Amendment claim where plaintiff contended that defendant "intentionally and repeatedly called him a snitch within earshot of other inmates"). Thus, this case is distinguishable from *Turner*, because [K.J.] did not urge [L.A.] to attack plaintiff, and *Childs*, because [K.J.] did not expressly out plaintiff as a snitch and only stopped by plaintiff's cell once, but defendants' conduct (if credited by the jury as deliberately indifferent) was arguably as malicious as defendants' conduct in *Turner* and *Childs* because [M.S.] and [K.J.] decided to out plaintiff as a snitch to [L.A.] -- the very person that defendants hoped plaintiff would sell out.

Accordingly, plaintiff's Eighth Amendment claims against defendants will proceed to trial, although he will be limited to an award of $1 in nominal damages, plus any punitive damages the jury might award. *Turner*, 564 F. App'x at 239 (compensatory damages unavailable where there was no evidence that plaintiff had been physically harmed). [6]

---

[6] Injunctive relief might also be available in a case like this one, *Welborn*, 110 F.3d at 524 n.3, but plaintiff has not asked for that relief. (Dkt. #1.)

13

ORDER

IT IS ORDERED that:

1) Plaintiff [Appellee]' motion for leave to file a sur-reply brief (dkt. #106) is GRANTED.

2) Defendants [K.J.] and [M.S.] motion for summary judgment (dkt. #73) is DENIED.

3) Plaintiff's motion for sanctions (dkt. #106) is DENIED.

4) The court will recruit counsel for plaintiff for trial and limited discovery. A scheduling conference will be held by Magistrate Judge Boor after recruitment of counsel to pick a mutually agreeable trial date and related deadlines.

Entered this 10th day of December, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

14

App014

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

APPELLEE

Plaintiff

v.                                                                    OPINION and ORDER

K.J. and M.S.                                                        23-cv-87-wmc[1]

Defendants

---

[Appellee] previously was incarcerated at the Wisconsin Secure Program Facility. He contends that four WSPF employees and two detectives from the Columbia County Sheriff's Office put him at risk of harm and failed to ensure his safety, in violation of his constitutional rights. [Appellee] is incarcerated and proceeding in forma pauperis, so I must screen his complaint and dismiss any portion that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. When screening a pro se litigant's complaint, I accept the allegations as true and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

I will grant [Appellee] leave to proceed against all but one defendant under the Eighth Amendment for their involvement in revealing him to be a confidential informant.

---

[1] I am exercising jurisdiction over this case for purposes of screening only.

[Appellee] also filed two motions asking for court intervention to prevent his transfer to a different institution and to place him away from multiple WSPF inmates. Dkt. 11, 13. Because [Appellee] is now incarcerated at Green Bay, *see* https://appsdoc.wi.gov/lop/home/home, I will deny his motions as moot.

## ALLEGATIONS OF FACT

[Appellants] [M.S.] and [K.J.] are detectives with the Columbia County Sheriff's Office. On December 6, 2022, [M.S.] sent [K.J.] to WSPF to speak with [Appellee] about another WSPF inmate who been charged with attempted first-degree murder of a female staff member at Columbia Correctional Institution. Prior to December 6, [K.J.] and [M.S.] agreed to meet with [Appellee] at WSPF in a confidential interview room because the inmate suspect was also located at WSPF and housed in segregation near [Appellee]. When [K.J.] was checking in at WSPF, defendant WSPF employees [redacted] and [redacted] called defendant [redacted]. They directed [redacted] to have defendant [redacted] call [Appellee] over the intercom to come out and talk with [K.J.]. [Appellee] told [redacted] that he was willing to talk, but out of concern for his safety the conversation had to be outside of the segregation unit, where the other inmate was also located.

[K.J.], [redacted] then called [M.S.] and explained [Appellee]'s concern, and they all agreed that [K.J.] would walk to [Appellee]'s cell front—which was within four feet of the other inmate's cell—to speak with [Appellee]. Defendant [redacted] agreed to escort [K.J.] to [Appellee]'s cell, allegedly commenting that he could "pay [Appellee] back for snitching on staff" and helping the investigation into the attempted murder. Dkt. 1 at 7.

2

Case: 3:23-cv-00087-wmc    SEALED    Document

[Redacted] then escorted [K.J.] to [Appellee] 's cell. [K.J.] identified himself to [Appellee], revealing [Appellee] to be a confidential informant vvithin earshot of the inmate suspect. [Appellee] said nothing and refused to leave his cell.

The inmate suspect immediately began threatening and harassing [Appellee], and a few minutes later Brown and Haulthouse informed the inmate suspect that [Appellee] had snitched on him for the attempted murder charge. The inmate suspect told other inmates that [Appellee] was a snitch, and for the following four days several inmates intimidated, threatened, and harassed [Appellee] asked [M.S.] and [K.J.] for protection, but [Appellee] received no replies. On December 23, [M.S.] called [Appellee] and apologized on behalf of the Columbia County Sheriff's Office. [M.S.] admitted that he, [K.I.], [redacted] had agreed that the best way to convict that inmate suspect was to out [Appellee] as a snitch. [Appellee] asked [M.S.] for protection, but he got none.

ANALYSIS

[Appellee] contends that defendants failed to ensure his safety, in violation of his Eighth Amendment rights. [Appellee] does not allege that he was actually harmed by any other inmate, but a prison official may violate an inmate's Eighth Amendment rights by maJiciously encouraging other prisoners to harm them, even if they are not actually harmed physically. *E.g., Smith v. Peters,* 631 F.3d 418, 421 (7th Cir. 201 l) ("Prison officials who recldessly expose a prisoner to a substantial risk of a serious physical injury violate his Eighth .Amendment rights."); *Tumer v. Pollarrf,* 564 F App'x 234, 239 (7th Cir. 20] 4) ("[G]iven the substantial danger to which Swiekatowsk.i allegedly exposed Turner, Turner may be eligible for nominal or

3

punitive damages."); *Jenkins v. Freeman*, 2010 WL 2812959, *1 (W.D. Wis. 2010) (citing *Irving v. Dormire*, 519 F.3d 441, 449 (8th Cir. 2008) (guard's attempt to induce other prisoners to assault plaintiff may violate Eighth Amendment, even if prisoner was not assaulted)). [Appellee]'s allegations show that [K. J. ], [M. S. ], [redacted] each participated in knowingly revealing [Appellee] to be a confidential informant to the inmate suspect. Although [Appellee] experienced no physical harm because of the threats and his relief in this case likely will be limited to nominal and punitive damages, [Appellee] was repeatedly threatened by the inmate suspect and other inmates. I will grant him leave to proceed against [K. J. ], [M. S. ], [redacted] under the Eighth Amendment.

[Appellee] does not state a claim against [redacted] because this defendant's involvement was limited to asking [Appellee] to speak to [K. J. ]; [redacted defendant] was not involved in the alleged constitutional violation of revealing [Appellee] as an informant. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability . . . requires personal involvement in the alleged constitutional deprivation."). I will dismiss [redacted] from this lawsuit.[Appellee] may not proceed against either [K. J. ] or [M. S. ] for failing to address his requests for protection. To state an Eighth Amendment failure to protect claim, an inmate must show that he was "incarcerated under conditions posting a substantial risk of serious harm" and that the defendant intentionally ignored that risk. *Farmer v. Brennan*, 5 11 U.S. 825, 834 (1994). [Appellee] alleges that he wrote to both [K. J. ] and [M. S. ] that he was being threatened by other inmates at WSPF, that he asked [M. S. ] over the phone for protection, and that neither defendant took action to protect him. It is not enough that [K. J. ] and [M. S. ] should have known about a risk to [Appellee]' safety, [Appellee] would have to allege that these defendants actually knew of that risk. *See Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008) (citing *Farmer*, 511

4

App018

U.S. at 842–43). [Appellee] does not say that he informed either defendant about the nature of the threats or that he explained to either defendant that the other inmates—all of whom were housed in segregation—would be able to carry out those threats. So, it would be unreasonable to infer that either [K.J.] or [M.S.] was actually aware of a substantial risk to [Appellee]'s safety, and [Appellee] does not state an Eighth Amendment failure to protect claim against them.

## ORDER

IT IS ORDERED that:

1. Plaintiff [Appellee] is GRANTED leave to proceed against defendants [K.J.], [M.S.], [redacted] under the Eighth Amendment, for revealing [Appellee] to be a confidential informant.

2. Plaintiff is DENIED leave to proceed on any other claim, and defendant [redacted] is DISMISSED.

3. Watts's motions for emergency injunctive relief, Dkt. 11, 13, are DENIED.

4. The court expects the parties to treat each other and the court with respect. Any abusive or threatening comments or conduct may result in sanctions, including entry of judgment against the offending party.

5. Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on defendants [redacted]. Under the agreement, the Department of Justice will have 60 days from the date of the Notice of Electronic Filing of this order to answer or otherwise plead to plaintiff's complaint if it accepts service for these defendants.

6. The clerk of court is directed to ensure that the United States Marshals Service serves defendants [K.J.] and [M.S.] with a copy of plaintiff's complaint and this order.

7. Plaintiff should not attempt to serve defendants on his own at this time.

8. For the time being, plaintiff must send the defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be representing defendants, he should serve the lawyer directly rather than defendants. The court will disregard documents that plaintiff submits

5

Case: 3.23-cv-00001

that do not show on the court's copy that he has sent a copy to defendants or defendants' attorney.

9. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of her documents.

10. If plaintiff is transferred or released while this case is pending, it is his obligation to inform the court of his new address. If he fails to do this and defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

Entered May 23, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

6

☑

# CERTIFICATE OF SERVICE
### Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on ___February 27, 2025___, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/___Steven C. McGaver_____

☐

# CERTIFICATE OF SERVICE
### Certificate of Service When Not All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                                address:

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

s/_____